Thank you, Your Honor. May it please the Court, I'm Thomas Byron from the Justice Department here on behalf of the government. I'd like to focus our attention initially, as we did in the briefs, on Exemption 5 as a work product privilege, because we think it covers both the documents here and their entirety. The purpose of the work product privilege, as this Court explained and Fernandez and the Supreme Court has repeatedly emphasized, is to ensure that the work of an attorney in preparing for litigation can't be exploited by his or her adversary. As Justice Jackson put it in his concurrence in Hickman, cases should not be litigated on bids borrowed from the adversary, from one to more than three. So, in this case, what we're talking about are two sections of a resource reference that's developed by experts within the Justice Department for prosecutors around the country. I'm sorry, Your Honor. Oh, like a course, yes. So, it's a resource, it's a reference. And in that sense, Your Honor, I think plaintiffs have referred to it as a treatise, and we think that's inaccurate for the Department of Law Enforcement, actually. Certainly, Your Honor. No, Judge Hawkins, let me be clear about the difference. So, the U.S. Attorney's Manual is actually a public document. It's on the government's public website. And it is among the documents that I wanted to emphasize today to indicate the transparency interests that plaintiffs are seeking to push here, to urge here. So, what this is, though, is what's called the U.S.A. Book, and it is solely available to prosecutors and other Justice Department personnel. It is not available to the public, and that's important. So, the U.S.A. Book includes, as Judge Burson was discussing, some important training elements. Of course, it has reference material. They call it the Blue Book. It's a series of blue books. We used to equate them to a series of blue books. So, I think, Your Honor, what we now call the Blue Book is the discovery manual, and that was at issue in the recent D.C. Circuit decision in the Act of Classical Association of Criminal Defense Lawyers case. But like the Blue Book, the U.S.A. Book has strategies and arguments that prosecutors, as the record here explains, may wish to consider in litigation. And it also includes factual information, as do many more product documents, that is integrated with and essential to that understanding of what's going to happen in litigation. So, Judge Hoffman, to go back to your question, what is this document and what is its purpose? Its purpose is to provide prosecutors with the resources. They are in the investigatory phase of a case, and then later, as well, when they're before a magistrate judge or a district judge, when they're before a judge in a suppression hearing, for example, and during an actual prosecution, to provide them with strategies and legal arguments and authorities, discussions of potential false claims and defenses. These are the classic. And that's between the investigative stage and the litigation stage. Does that matter? I don't think it does to a person. And let me just explain how this plays out in the real world here for prosecutors who are using or relying on this document, these documents. At the investigative stage, the prosecutor and the agents who are working the case don't know whether it's actually going to result in an actual indictment, prosecution, or trial. Right. When you're talking about the anticipation of prosecution, at what point do you bring the information in? Well, the point here is that these two documents that we're talking about in this case were prepared specifically in anticipation of litigation. That's the uniform and consistent standard that the courts, the rules, the treatises, all use in reference to the work product document. Everything the government does is in anticipation of litigation in the sense of we want to do it legally rather than illegally or in a way that's defensible. And so we are going to do whatever we're going to do in a way that if we get sued, we have defense. So I think that's not the right way to look at the standard, and that's not the way the courts define the standard. So let me just see if I can differentiate the two points. So one thing that all the cases are very clear about is that, while it's theoretically possible, as you suggest, to say that everything a lawyer does or everything a government lawyer does is in anticipation of eventual litigation of some kind, what we really are looking for is both a subjective and an objective component. As the D.C. Circuit has said, there's to be a subjective belief by the author that litigation is foreseeable and that that subjective belief has to be objectively reasonable. So here we know, because these documents are all about claims and defenses and arguments and strategies, we know that this was prepared in anticipation of litigation. Again, I go back to the D.C. Circuit's recent decision earlier this year. It's so easy to say, I apologize for interrupting you, but let me be clear, this is true. Well, you can't tell them who it is that we're calling. Well, you can, Your Honor, because the record explains, the Cunningham Declarations here explain, that the documents include legal strategies and arguments that prosecutors may wish to consider raising in litigation. And so in that sense, we know that it was prepared for the purpose of being a resource and a reference for litigation, not just an abstract theoretical treatise or, as you suggested, a training manual. It is more than that. Now, plaintiffs have also argued that there's factual material here about the technologies that are involved. But again, we know from cases going all the way back to the England that the inclusive factual material doesn't deprive opinion or product of its privileged nature. And that's the case here too. The reason that certain aspects of factual information about the technologies are included is so that the prosecutor will be prepared to make these arguments, to explain to judges what the reason is that these technologies, these ... One thing I wondered about, trying to think about the scope of the work, but one point is how far back into the organization you would go when these people are not actually litigators. But the other one is the criminal case. I understand the word product applies to criminal cases, but at the same time, the standard here is really specifically what you can't obtain from discovery. It's very odd to apply that to a criminal case because the whole discovery situation is entirely different. Well, you're right. In fact, some of what you can get in a criminal case with regard to the prosecution would be work product in a civil case. Isn't that right? So I think, Judge Berslin, that is right in particular circumstances. So let me just point out that in the FTC against Cora Lawyer case, the Supreme Court made clear the standard isn't whether a particular document could be disclosed in one case as opposed to another in civil discovery or that it might overcome the privilege in a particular circumstance. The standard is whether it's routinely, the document is routinely and normally available. And I think earlier the Supreme Court said that the attorney or product privilege, even though it's a qualifying privilege, and this I think goes to your question as well, it's the criminal discovery side, right? Even though it's a qualifying privilege, it's a blanket in Exemption 5. And that's important. So let me go to another aspect of your question. I'm sorry. Did I get it? Well, it may be blanket, but you still have to know blanket what. And this is a criminal case in which different discovery rules apply. And that's the standard. It's what you would get in discovery. The work product is not in the statute. It's simply put into the statute as an example. So let me give you two examples, Judge Berslin, to see if I can illustrate this point. One is this Corton decision in Fernandez. And I think you may have been on the telephone, if I remember correctly. In that case, this Court protected under the prosecution memo and the death penalty analysis from discovery by the criminal defendant who sought to use it in the criminal trial. Those are classic examples for a product. They are the kinds of things that prosecutors use to consider strategies for a particular case. There's no difference here, except that it applies to common issues that arise in a variety of cases. The second example I would use is the situation, well, I guess it just goes back to the terms of FOIA, which is available in civil discovery. So we think the standard is not quite different, actually, in criminal rule 16 and civil rule 26. The same rule applies in anticipation of litigation. The same standard governs under both situations. But FOIA is clear that the question is whether it would be available in civil discovery. So if you would imagine a situation where a criminal defendant in Exemption 5, I believe you're correct. I believe that's right. In civil litigation against ten agents, I think they would have the same rule that would be applied. But it's not civil litigation. Well, no, it's not. I don't think that's right, just for a second. It's not odd at all in the sense that the whole point as it's presented in Fernandez is to prevent exploitation of an attorney's work in preparation for litigation by the opponent, by the adversary. And so if, for example, a criminal defendant could bring a FOIA suit in order to obtain whether she was unable to get a criminal discovery, that would defeat the purpose of the important part of the question. It seems to me, based on the bond index of Mr. Kennedy and his declarations, there seems to be different categories of information in CRIM 4 and CRIM 5. But it doesn't look like people have looked at it in that way. I'm trying to figure out if there's a reason. It seems like the district court and the parties seem to be saying it's all the same type of information. Is that right? So just, Ricky, I think what the Cunningham declarations explain is that there's a lot of information in these documents, but that the documents themselves as a whole reflect that attorney work product resolution, which covers, as I explained earlier, and the Supreme Court has explained. Your Honor, this is a litigation against an agency. I apologize. My understanding is that it generally, but it doesn't matter as they say because both the civil and criminal parties are aligned. I'm just concerned when you go and check. I apologize, Your Honor. I was not listening to what you were saying because I was going to check what you told me, so I'm sorry you told me I was wrong. I regret that, Your Honor. Judge Ricky, I think there is no need to segregate the different types of information. No need. I'm sorry. Did you say no need? Your Honor, that's correct. There's no need, and the D.C. Circuit's decision in Judicial Watch explains why that, in this court's decision, Pacific Fisheries is consistent with that, that where attorney work product privilege applies, there's no obligation to segregate non-privileged information from the document. It is a self-privilege. I see I have three minutes remaining. I'd like to reserve some time for rebuttal. Thank you, Your Honor. Good morning, Your Honors. Linda Lye on behalf of the Clemson faculty. During first of all work product issues, the government in its brief really creates a false dichotomy between the specific claim test and the anticipation obligation test. The former is simply a sensible way of implementing the latter in the context that we have here. DOJ, a large entity made up largely of lawyers whose job, whose mandate is to enforce the law. Under the government's approach, criminal investigations are inextricably intertwined with criminal prosecutions, and therefore everything is in anticipation of litigation. But that approach speaks too broadly and would exempt everything that DOJ lawyers write pertaining to this case. You all started off with a request that was pretty massive. You've been given everything. I understand this correctly. Except for the narratives. I mean, what we're down to is the narratives in CRIM 4 and CRIM 5. Is that correct? We were given these largely under, because the district court ruled in favor of us, and the government has proceeded. So the government's approach speaks too broadly. But when the government is acting as a prosecutor seeking to enforce the law, it acts as a litigator. But it also acts, the DOJ entities also act as policy makers establishing the government's rules on how it's going to conduct criminal investigations. And this goes to the important distinction that Jennifer Zung was focusing on in terms of the difference between the investigatory phase and the litigation phase. And, indeed. What do we know from the record here about what is in these documents? The government talks about the USA Book in general, but what I understand from the USA Book in general, or I understand these particular provisions, right? And I think the record makes clear that it is, although the government tries to frame it as a manual mostly for prosecutors, the declarations in the record also makes clear that it is an investigatory manual, and its counsel also described it just now in argument. At ER 50 and 57, in the Fawn Index, the document is described as providing guidance to federal prosecutors and case agents. At ER 34, it's described as relating to prospective federal criminal prosecutions and investigations, and to aid federal law enforcement personnel, not just attorneys, in conducting such prosecutions and investigations. So this is very much about the investigatory phase, and to be sure it's going to raise legal issues that might arise in a subsequent criminal prosecution should the government choose to prosecute. But this is very much like the situation in coastal states, which even under the recent panel opinion of the D.C. Circuit and NACDL illustrates the circumstances under which the specific claim test has utility. In this pre-litigation context, we don't know when the government is actually going to prosecute. Coastal states involved a situation with memos prepared by Department of Energy field staff in response to questions, attorneys in response to questions from field staff conducting audits. The court said that audits do not inevitably result in enforcement litigation. So the specific claim test served a very useful function of helping to distinguish those memos where litigation was reasonably foreseeable and thus worthy of court product protection and thus in anticipation of litigation within the meaning of the rule from those documents where it was not. First of all, we're not in the D.C. Circuit. And the fact is that most science briefs seem to think we are in the D.C. Circuit. We're not in the D.C. Circuit. So we're starting with our human test. And the D.C. Circuit opinions in particular seem to use the term specific claim in different ways. And my understanding is the specificity and the stage that you are on technically. In other words, somebody could be very specifically investigating a particular potential crime, but it's still just an investigation. It's not an end. They don't know what it's going to turn out. They don't know what their prosecutorial discretion is going to tell them about whether to go forward. So which are you arguing? Are you arguing both? In other words, is it how far back we are from the actual case? Or is it that it's not a specific case, it's a case in general? You're correct, Your Honor. The D.C. Circuit does use the specific claim language in different ways. And the way we mean it is closer to a specific case versus general policy. So the closer you get to a specific case, regardless of whether a parent may or may not prosecute, the more you have documents that are very clearly core work product disclosure of which would harm the adverse criminal system. But the further you are away from specific cases, and you're talking about general guidelines, the more you have general policies, the government's overarching policies, disclosure of which would actually further FOIA's core purpose of avoiding secret law. And what the specific claim test in this context acknowledges is that government attorneys act in multiple functions, particularly when the sovereign is exercising its sovereign power to disclose. It is creating rules, it is creating policies, it is creating guidelines for how the government is discharging its official duties, here the weighty duty of conducting criminal investigations. Those are policy functions. In the ordinary civil discovery context, when a lawyer gives business advice to a corporation, that's business advice. The privilege is not available. The analog here in the government context is policy advice. So the specific claim test provides a useful way to distinguish the sometimes difficult distinctions between lawyers acting as litigators. There is a firm product of case law, I think, in the NYSERDA that says that if it seems to assume or assert that a lawyer's memo to a client about a prospective merger, which says, you know, you should do it this way instead of that way, or else there could be problems, is a work product in document. Even though there's no actual, you know, there may be a lawsuit or there may not be a lawsuit. Is that your understanding? So in the government's reply brief, it cited a number of cases, the Second Circuit's decision in Alderman and several Ninth Circuit decisions adopting the because of test to analyze these arguably dual-purpose documents. And I think what we have here at root is that the USA book is a dual-purpose document that's clearly designed for investigators, prosecutors during the investigation phase to figure out what the guidelines should be on how to use these surveillance technologies. It also ends up being relevant in subsequent prosecutions in the event the government chooses to prosecute because many of the legal issues would arise on motions to suppress. However, I thought this would satisfy the because of standards for not being a work product. The test under the because of standard is whether the document would have been created irrespective of the potential for subsequent litigation. And here we expect the government to establish guidelines for how it conducts its criminal investigations. We expect the government to identify the legal constraints on how it conducts criminal investigations. Even if it's not going to jeopardize the subsequent criminal investigation, we expect the government to do that because we expect the executive to conduct itself in accordance with the law and the discharge of all of its official duties irrespective of the potential for bringing a subsequent criminal prosecution or jeopardizing it. So it would satisfy this court's because of standard. And, again, I think that whether you frame it as a because of that way or looking at it with a specific claim test, fundamentally there is a distinction between DOJ attorneys acting in a legal litigator capacity and DOJ attorneys acting in a policymaking capacity. The specific claim test is a helpful way of making that distinction. The closer you get to a specific set of facts, this is probably confusing. Should we assume that the recent D.C. Circuit case was correctly decided or should we assume that the current judges in that case were correct if they were? Because your description of where the line is, I'm not sure how the result is the same. I think the path is different, Your Honor. Prior to NACDL, I think that there was a reasonable interpretation of the D.C. Circuit case law. I understand we are not in that circuit, which would apply the specific claim test to those situations where the government is acting as a prosecutor seeking to enforce the law. That's how In Re's field case used to describe it. The D.C. Circuit and NACDL panel rejected a bright-line rule that the specific claim test applies in all of those cases. But Judge Sintel offers compelling arguments as to why this court should not go that way. Even if the court goes with the panel approach in NACDL, however, I think we arrive at the same result because of the difference between the investigation phase and the litigation phase. NACDL simply declined to apply the specific claim test in a context where it was not necessary. There is no ambiguity that a discovery manual is prepared in anticipation of litigation because discovery only arises in litigation. Here, by contrast, we have an investigatory manual. And there is, in this pre-litigation context, NACDL, in discussing coastal states, explain why the specific claim test is useful. There are situations where audits, criminal investigations, don't necessarily result in enforcement litigation. So how do we determine those documents that are truly anticipatory of litigation in the work product sense and thus worthy of work product protection? And how do we distinguish those from more overarching policy documents, which the disclosure of which would not compromise the adversarial process, disclosure of which would be consistent with general discovery principles? Again, in the civil discovery context, we recognize that business advice versus legal advice is not listed as a specific claim requirement in that context. Yes, I think the pillow that I served during doesn't require a specific claim. And again, I don't think it's so much that it's a new test or it's at odds with the inanticipation, but it's a way of applying the inanticipation test, the because of test, in this very unusual factual situation where the entity is a government entity whose staff is mostly lawyers who are charged with enforcing the law. If you take a very broad approach to, in that everything could resolve criminal prosecutions, then much is work product. But if you recognize that in this particular factual context, there is some non-litigation-oriented documentation being generated regarding law enforcement, and the specific claim test is a helpful way at figuring out how to distinguish between the government as litigator or government as policymaker situation. So again, it's a way of implementing the inanticipation, the litigation test, in this factual context. And I think, if I may not have answered your question, Judge Berzon, in what context would I apply the specific claim test? I think one approach is when the government is acting as a prosecutor seeking to enforce the law, a narrower approach consistent with the majority in NACDL would be in the pre-litigation context. Here we have that investigatory pre-litigation context. I don't know if that's considered a test. It's not in here. It's not over here. Of course they are. Is there any need to categorize based on the descriptions of the bond index? Thank you. Yes, absolutely, Your Honor. The government argues broadly that segregation is not required because this is work product, but the case law does not support that. Pacific Fisheries, a decision of this court, said that health merely facts. There's no need to segregate fact from opinion work product. It did not hold that if there is a little bit of work product in a document, the rest can be withheld as well. So here I think we may have a situation where there are the government is establishing the rules of the game. When we use the surveillance technology, no court order is required. When we use the surveillance technology, a warrant is required. What are the rules by which the government is operating? The government's declarations, I think there's a disconnect between how it describes the documents in its brief and what the declarations actually say. The government in its brief repeatedly says that there is a kind of analysis of the legal risks of various arguments that the declarations are void of any such assertion. They merely say that the U.S.A. book discusses potential legal strategies, defenses, and arguments as fake, artfully worded language with salient omissions because in describing three documents which were held work product by the district court and which are not on appeal, the government went to great lengths to offer a particularized explanation of how those documents, CRMs 1 through 3, contain the strengths and weaknesses of alternative litigating positions. The CRM 4 bond index, I'm having a little trouble making out exactly what that is. And it looks like everybody's sort of kind of having, even Mr. Cunningham, it's hard to discern at least my view of what's there. Did the district court consider, I know there was some discussion, you know, why the district court did not look in camera at the documents? Well, I think there was a precedent established in this court's precedent in Wiener, for example, that in-camera reviews to be at last resort should not substitute for open discussions, adversarial discussions in open court. I guess I understand that. Are we at the last resort or are we not at the last resort here? I'm just curious. I think this court, I think the litigants and the public would benefit from this court clarifying what the legal standard is for work product, clarifying that in this unique situation where you have a government entity who's lawyers, made up largely of lawyers who are enforcing the law, clearly engaged in policymaking functions, a specific claim test provides a useful way of distinguishing and implementing the inter-anticipation litigation test, and then reviewing the documents under that standard. I'm just wondering if the public would benefit from this sort of standard, similar to CERB here, if any of the public is interested in the documents, is it in any way? In anticipation of litigation, I mean, it would depend on the context of the rules, and as the district court is not here to observe, there are federal rules of civil procedure and criminal procedure. Rule 16 does not actually refer to in anticipation of litigation. May I address 7E? Thank you. So the government still needs to prove risk of circumvention because this case involves guidelines involving surveillance techniques. Hamdan is distinguishable. Hamdan held only the potential segregation issue again, right, because apparently it largely involves techniques. I do not believe that the court would have to engage in a segregation issue for the following reason, that everything is a guideline here. This is the USA book. It is beautifully a resource guide for how to conduct surveillance using certain techniques. Because it is a guideline about surveillance techniques, it necessarily involves techniques. So in some senses, I think the government may be trying to argue, well, because it's a technique, because techniques are involved, we don't have to prove risk of circumvention. But guidelines involving surveillance techniques will always involve techniques. So that cannot be the reason to withhold information. I'm having kind of the same thing. That is, if I understood it without the circumvention language directly applicable, you still have to demonstrate that there's something that isn't known. That's right. And that ties back to what would somebody want to know? I think whether the technique is generally known is very much linked to the risk of circumvention analysis, but not coextensive. If something is generally known, then disclosure would not risk circumvention. However, there might be some things that are not generally known, disclosure of which would still not risk circumvention, and that goes to the concern that the government has not met its burden here. It's merely said these are details about how we use the technology, but doesn't explain the nature of the details. Because details could mean we only use this technology when we have a warrant. We don't think relevant, a contract order which requires only relevance is sufficient. That is not the kind of detail disclosure of which would risk circumvention. That's information about the government's legal standards. A defendant wouldn't be able to say, aha, I can now engage in conduct that's relevant to a crime with impunity. I'll just avoid engaging in action that could rise to probable cause. That makes no sense. So there is a type of information which, even if not generally known, disclosure of which would still not risk circumvention. And the problem with the government's declarations is that they're far too conclusory. They haven't explained what the type of details here are. Are we talking about legal standards, or are we talking about technical implementation? We don't conduct wiretaps on Tuesdays, for example. Surely that would be risk to circumvention. The government says we mischaracterize the briefs, the documents as referring to legal standards, but the record itself clearly makes sure that this involves legal standards. ER 32 of the USA book contains an up-to-date legal analysis. ER 36, it provides prosecutors with an overview of the relevant law and its applications. But no, they're not, because the relevant law in terms of this is the rule by which you, the government, when you're conducting criminal investigations, must operate. These are the rules of the game. That is the core of what FOIA intended to require disclosure of. There's an aversion to secret law. Yes, Your Honor. So precisely because the documents at issue here are guidelines regarding how the government conducts its official duties are the heart of what FOIA intended to disclose. We must scrutinize the government's broad assertions of privilege with great care. Disclosure of these guidelines would not harm the adversarial process, because they represent the government's overarching policies. And the specific claim test is a sensible way of implementing the inanticipation litigation test. It would address the work product concerns by not requiring disclosure in specific cases where litigation strategy would actually be harmed. Thank you. Thank you, Your Honor. I'd like to start by focusing on Ms. Lye's argument that this is some kind of general policy guidance rather than litigation strategy or arguments. I think, again, that's why, by the record, this does talk to Mr. Manningham's declarations, and the record explained that this concerns legal strategies and arguments which are relevant to litigation. Just to put the contrast to that, I explained earlier, in answering Judge Hawkins' question, there are lots of examples of transparent guidance policies that are public that the Justice Department does promulgate. Most recently, in September of last year, the Deputy Attorney General promulgated a policy regarding the use of cell site simulator technology, answering many of the questions that we just hear are asking about whether a warrant is required and what are the exceptions to that. That was a kind of policy document that is public. These are not that sort of policy guidance document. They are, instead, the work of litigators in bringing their expertise to bear on common issues that arise in prosecutions around the country. The fact that the real problem is that when they leave, the answer is we have to go look at this. Although, even though I understand the arguments against looking at it, I can't really do any of this policy construction. I certainly understand that, Judge Brisson, and I guess I would say, in picking up on Judge McGee's question earlier as well, that we are at the last resort stage. I think it's certainly true that the District Court here should not have ordered disclosure based on what looks like a lack of clarity or a sense of uncertainty on the judge's part about what was the meaning of the declarations. There are a couple of ways of addressing that. That's absolutely right, Your Honor, and we've made that clear in our brief. We offer to make it available for this Board's in-camera inspection. If a bond requires it, certainly the Board would be happy to do that. The point that I think we want to keep coming back to is this uniform standard that in anticipation of litigation has to be assessed based on all of the circumstances, based on the function of the document. In many of the cases, talk about a functional standard. Function of this document. Function is to investigate a convicted bank-suspecting crime or a crime in which there's at least probable cause, let's say, or there is probable cause or there are whatever. But it's an investigative issue. And then, A, they may not find anything, so there may be no litigation. B, they may decide for prosecutorial discretionary reasons not to prosecute. So there are many reasons why the fact that you're investigating something doesn't necessarily mean there's litigation. Sir, is there an argument that if you're investigating something, period, that they anticipate some litigation? No, Your Honor. Again, we have to look at the specific document, the circumstances, and the function. So here the function. We had a manual called Advice to Investigators of Federal Crimes. That would do. Advice to Investigators of Federal Crimes. This is how you investigate the crime, and these are legal standards that apply. I think that's right, Your Honor. And, again, that kind of document is aimed just at investigators. It's one thing that this document is not. First of all, it's not aimed just at investigators. Investigators are working hand-in-hand with prosecutors at this stage of the litigation. Actually, these investigators are the actual possible prosecutors, but they're still just investigators. Actually, the prosecutors, I think, Your Honor, are working in their capacity as prosecutors. They are the ones who have to go before a magistrate judge or a district judge to get judicial authorization, whether a warrant or some other order. For example, when prosecutors are acting as investigators, they don't get absolute immunity. That's correct, Your Honor, and there is a cutoff point for immunity purposes, but that's a very different question, the immunity question. Unless, Your Honor, it's because they're not actually doing anything. No, but they, in this context, Your Honor, even though it's pre-indictment, for example, the whole point of having this reference, I see I'm out of time, but I'd like to just continue. The whole point of having this reference, this resource for the prosecutors is they have to be sure that they are anticipating the kinds of arguments that are going to be made in a subsequent suppression motion, for example, and litigation in the prosecution itself. And you can't know at the investigation stage which cases are going to go to that stage and which are not. Now, Adelman makes clear, the other cases are equally clear, that in anticipation of litigation, it doesn't have to wait for the events giving rise to the claim that the Putin party and the Putin lawyer, as Greg Miller says, is going to anticipate opening up a reference to a legal case. Yes, so Exemption 70E covers both techniques and procedures, on one hand, which don't require, as Mueller does that don't require proof of circumvention, and guidelines, which do. And the record in this case shows that some aspects of these documents include techniques and procedures. Others include guidelines. So the problem here is that the government hasn't had an opportunity to undertake that reasonable segregation that it would have to do if this court were to rule that the work-product privilege doesn't apply. So, of course, you're right that there would be that step required if we were to get to that point. We think there's no need to get to that point because the work-product privilege is so clearly applicable. Here, I also just want to mention one other point, Your Honor, about, I apologize, I won't take questions. Let me just, I still have a question, Your Honor. I still have a slice of the argument in Judge Brisson's question. Shouldn't we distinguish between legal advice regarding investigative stages and legal advice regarding actual litigation? And how does the D.C. Circuit case account for that distinction? So I don't think this court or any other cases have addressed that question. And I don't think that it would serve the interests of the privilege to draw that kind of line because, again, you have to look at the functional purpose of the particular documents that issue. So there, as Judge Brisson's hypothetical made clear, there are some kinds of documents about the investigative stage that wouldn't be work-product. But this document, which is directed to prosecutors, is aimed at the kinds of arguments and legal strategies that are going to be raised at the trial, criminal trial itself. This document, the fact that it's also relevant to the investigatory stage, doesn't undermine or remove the privilege from these documents. If the court has no further questions, we'd urge you to refer. Thank you, Your Honor. Thank you.
judges: Hawkins, Berzon, Murguia